[No. B009702. Second Dist., Div. One. June 28, 1985.]

OCTAVIO TORRES, a Minor, etc., Plaintiff and Appellant, v.
NATHANIEL J. FRIEDMAN et al., Defendants and Respondents.

COUNSEL

Manuel Hidalgo and Robert J. Jagiello for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, R. Gaylord Smith and Shirley D. Deutsch for Defendants and Respondents.

OPINION

**DALSIMER, J.**—This case involves the issue whether an attorney who represents a minor through a guardian ad litem may withdraw as counsel of record without prior court approval. We have concluded that he may not.

Because this appeal is from a summary judgment in favor of defendants Nathaniel J. Friedman and Nathaniel J. Friedman, Inc., we state the facts in the light most favorable to plaintiff, Octavio Torres. (See *Sukut Construction, Inc.* v. *Cabot, Cabot & Forbes Land Trust* (1979) 95 Cal.App.3d 527, 529 [157 Cal.Rptr. 289]; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 661-663 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].)

On December 28, 1977, Valente Torres, Graciela Torres, and their minor son, Octavio Torres, by Valente Torres as his guardian ad litem sued South Hoover Hospital and various physicians in Torres v. Pilson (Super. Ct. L.A. Co., No. C224916) (hereinafter Pilson) for medical malpractice. The

complaint alleged that the defendants were negligent in their care of Graciela Torres both before and during the birth of Octavio Torres and that this negligence caused severe neurological damage to Octavio Torres. Octavio Torres was born on March 27, 1977.

On May 30, 1980, Nathaniel Friedman became attorney of record for plaintiffs in that litigation. Mr. Friedman filed on plaintiffs' behalf a first amended complaint which sought general damages and special damages for past and future medical expenses for Octavio Torres. After he filed the first amended complaint, Attorney Friedman obtained medical records that disclosed that Octavio Torres was born at Martin Luther King, Jr. Hospital, not South Hoover Hospital. The first amended complaint had alleged that the birth occurred at South Hoover Hospital.

Although Attorney Friedman knew or should have known that Octavio Torres may well have been "mentally incapacitated" within the meaning of Government Code section 911.4[1] and had no guardian of his person, he did not attempt to file a claim against the County of Los Angeles upon learning that Octavio Torres had been born in a county hospital. He consulted a neonatologist who advised him that the defendants did not cause Octavio Torres' condition but that the condition was instead the result of chorioamnionitis, a congenital infection of the mother's uterus.

The neonatologist did not review the records of Martin Luther King, Jr. Hospital, to which Mrs. Torres had been transferred before the birth of Octavio Torres, and did not speak to the attending physicians at that hospital. As a result of this limited review, Attorney Friedman determined that the medical malpractice action had no merit, and he communicated this opinion to defense counsel. He further told defense counsel that he was recommending dismissal to his clients. In Mrs. Torres' deposition she stated that, when she described the delivery of Octavio Torres to a physician who was treating Octavio Torres at Children's Hospital, the physician told her that, since the waters had broken a long time before the delivery, Octavio Torres' neurological problems might be attributable to the fact that there had not been enough air.

During his representation of the Torreses, Attorney Friedman had received a request for admissions served on the plaintiffs and had objected to this discovery device in a letter to defense counsel by describing it as a

---

[1]Government Code section 911.4 provides in pertinent part that, in computing the one-year period during which a party may apply to a public entity for leave to present a late claim, "time during which the person who sustained the alleged injury, damage, or loss is a minor shall be counted, but the time during which he is mentally incapacitated and does not have a guardian or a conservator of his person shall not be counted."

"sharp practice." On July 16, 1980, Attorney Friedman met with Valente and Graciela Torres, who did not speak English, and told them through an interpreter that he believed the action lacked merit and that he wanted them to sign a substitution of attorney substituting themselves in propria persona. Mr. and Mrs. Torres signed the substitution of attorney form on July 16, 1980, and the form was filed the next day. Although the substitution of attorney form states that "VALENTE TORRES, GRACIELA TORRES and OCTAVIO TORRES, a minor by VALENTE TORRES, his guardian ad litem, themselves in pro per" were being substituted in place of Mr. Friedman's law firm, the lines for signature of party and signature of new attorney are simply signed by Valente and Graciela Torres. There is no signature on the form by Valente Torres as guardian ad litem for Octavio Torres, and no court approval was obtained for the purported substitution of the guardian ad litem.

After the substitution was signed and filed, the defendants in Pilson served the plaintiffs with requests for admissions that no act or omission to act attributable to any of the defendants was negligent, that no act or omission to act attributable to any of the defendants caused damage to any of the plaintiffs, and that no act or omission to act attributable to any person on the premises of South Hoover Hospital was wrongful as to any of the plaintiffs. The plaintiffs failed to respond to the requests for admissions, and summary judgment was entered against them based on the deemed admissions.

On June 21, 1982, Valente Torres and Graciela Torres filed a complaint in United States District Court in *Torres* v. *Alschuler* (C.D.Cal.) (Dock. No. CV 82 3091 RG) charging respondents and others with legal malpractice relating to their representation of Valente and Graciela Torres in Pilson. In the federal action Valente and Graciela Torres alleged that Attorney Friedman negligently failed to include Martin Luther King, Jr. Hospital in the prior litigation and that he negligently abandoned them during the lawsuit by fraudulently obtaining their signatures on the substitution of attorney form. They further alleged that as a result of respondents' negligence they did not recover premajority special damages under Code of Civil Procedure section 376.

In the federal action the court found that Valente and Graciela Torres had voluntarily consented to substitute themselves in propria persona and concluded that Attorney Friedman's determination that the action lacked merit was "not manifestly erroneous as a matter of law" and, accordingly, that he is not liable to Valente and Graciela Torres for his "refusal to proceed" as attorney of record. (See *Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 309-311 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].) Octavio Torres was not a party to the federal litigation.

On June 21, 1982, the same day that the federal action was commenced, Octavio Torres by Graciela Torres as his guardian ad litem filed in the instant case a complaint for legal malpractice by respondents based on respondents' handling of Pilson. The trial court granted summary judgment in favor of respondents because it concluded that Attorney Friedman did not become counsel for plaintiff until long after the time for filing a claim against the county had expired and that the legal malpractice action was otherwise barred by collateral estoppel as a result of the unfavorable outcome of plaintiff's parents' federal action. Plaintiff filed his notice of appeal after entry of the minute order granting the motion for summary judgment but prior to entry of judgment. For good cause found, we treat the notice of appeal as one filed immediately after entry of judgment. (Cal. Rules of Court, rule 2(c).)

## COLLATERAL ESTOPPEL

█ The doctrine of collateral estoppel precludes a party from litigating an issue when that issue has previously been determined in a final judgment on the merits against the party or someone so closely associated with the party as to be in privity with him. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874-875 [151 Cal.Rptr. 285, 587 P.2d 1098].) █ Collateral estoppel may only be applied if the following due process requirements are met: (1) the party to be estopped must have had an identity or community of interest with and adequate representation by the losing party in the earlier litigation and (2) the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. (*Id.,* at p. 875.) Thus, in *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942 [126 Cal.Rptr. 805, 544 P.2d 941], while the court held a child was collaterally estopped from challenging the amount of child support previously set in the divorce judgment (*id.,* at p. 950), the court pointed out that the child's interests had been adequately represented (*id.,* at p. 951.).

█ Octavio Torres, as a minor, is not collaterally estopped from challenging the effectiveness of the substitution as to himself. The issues whether the attempted substitution of Valente Torres as attorney in propria persona for himself as guardian ad litem for Octavio Torres was effective and, if so, whether respondents acted properly in securing that substitution were not before the federal court in *Torres* v. *Alschuler, supra,* (Dock. No. CV 82 3091 RG). The federal court's finding that respondents were not "manifestly erroneous as a matter of law" in determining that a claim against the county would lack merit certainly does not preclude Octavio Torres from litigating the issue whether failure to initiate such claim was negligent.

Moreover, we take judicial notice of the fact that plaintiff's action against the county for medical malpractice involving the treatment his mother received at Martin Luther King, Jr. Hospital just prior to plaintiff's birth still endures.[2] The county's general demurrer, which was based in part on the ground the plaintiff failed to file a timely claim, has been overruled. However, the issue as to the timeliness of the filing under the claim statutes has not been finally resolved.

### EFFECTIVENESS OF SUBSTITUTION OF ATTORNEY

■ The purported substitution of Valente Torres as guardian ad litem for Octavio Torres was ineffective. ■ The relationship between a minor and the attorney retained by his guardian ad litem differs from the relationship between an adult client and his attorney in material respects. (*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 652, 657 [169 P.2d 442].) For example, a minor, who must appear through a guardian, is not bound by admissions of the guardian ad litem that have not been approved by the court. (*Ibid.*) The guardian ad litem is an officer of the court appointing him (*Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 13 [118 Cal.Rptr. 21, 529 P.2d 53]; *Cole* v. *Superior Court* (1883) 63 Cal. 86, 89) and is essentially an agent of the court whose duty it is to protect the rights of the minor. (*Berry* v. *Chaplin, supra,* 74 Cal.App.2d 652, 657.)

■ While the guardian ad litem has the power to assent to procedural steps that will facilitate a determination of the case (*Cloud* v. *Market Street Ry. Co.* (1946) 74 Cal.App.2d 92, 101 [168 P.2d 191]), the guardian ad litem cannot prejudice substantial rights of the minor by admissions, waivers, or stipulations. (*Ibid.*) ■ "The necessity of employment of an *attorney* by a guardian ad litem who is not himself a lawyer is obvious, . . . ." (4 Witkin Cal. Procedure (3d ed. 1985) Pleading, § 65, p. 103, italics in original.) The reason that Professor Witkin characterizes this as obvious is that no person who is not an attorney may represent another in a legal proceeding. (Bus. & Prof. Code, § 6125; *Schroeder* v. *Wheeler* (1932) 126 Cal.App. 367, 378 [14 P.2d 903].) Technically, because the substitution of attorney form was not signed by Valente Torres as guardian ad litem for Octavio Torres, it did not remove respondents as attorney of record. More importantly, the substitution was also ineffective as to Octavio Torres for the fundamental reason that it was not approved by the court.

The need for court approval of an attorney's withdrawal from representation of a minor who appears through a guardian ad litem is apparent from the circumstances of this case.

---

[2]Pursuant to rule 12(a), California Rules of Court, we have augmented the record on appeal by ordering up the superior court file entitled Octavio Torres, a Minor, etc. v. County of Los Angeles, etc., et al. (Super. Ct. L.A. Co., No. SC C 07011).

The withdrawal of counsel as distinguished from the substitution of qualified counsel leaves the guardian ad litem in the untenable position of perhaps committing a misdemeanor: practicing law without a license. (Bus. & Prof. Code, § 6126.) Thus, a trial judge should not ordinarily permit an attorney to withdraw unless other qualified counsel has been obtained. Instances will arise, however, where an order permitting counsel to withdraw before replacement counsel has been obtained may be a proper exercise of the judge's discretion due to extenuating circumstances. In those situations the court should adequately apprise the guardian ad litem of the need to obtain qualified replacement counsel and the fact that the guardian ad litem would be unable to proceed in propria persona as guardian ad litem.

Court approval is necessary for the further reason that the attorney's decision to withdraw may well be the result of his determination that the action has no merit. Such a determination relative to the minor's causes of action may be tantamount to a stipulation or admission requiring court scrutiny as to whether the minor's rights are being fairly represented; a consensual withdrawal under those circumstances is not simply a procedural step. (See *Berry* v. *Chaplin, supra,* 74 Cal.App.2d 652, 657-658; *Cloud* v. *Market Street Ry. Co., supra,* 74 Cal.App.2d 92, 101.) As in the present case, it is quite possible that the minor's rights will be severely jeopardized by such withdrawal. Because the court has a duty to see that the minor's rights are not unfairly compromised by those appointed to represent him, we hold that an attorney must obtain court approval prior to withdrawing as attorney of record for a minor appearing through a guardian ad litem.

Since the purported substitution of Valente Torres as guardian ad litem for Octavio Torres in propria persona was ineffective, triable issues of fact remain as to whether respondents negligently represented Octavio Torres and, if so, whether Octavio Torres was damaged by such negligence.

The judgment is reversed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied July 18, 1985, and respondents' petition for review by the Supreme Court was denied October 3, 1985.