Stanley T. **Torres** and Jeanne H. Rayphand, Plaintiffs/Appellants; Alexandro C. Tudela and Nicolas C Sablan, Intervenors/Appellees
v.
Froilan C. **Tenorio**, Governor, Commonwealth of the Northern Mariana Islands; Benigno M. Sablan, Secretary, Department of Lands and Natural Resources; Bertha T. Camacho, Director, Division of Public Lands; and L & T Group of Companies, Ltd., Defendants/Appellees; Theodore R. Mitchell, Respondent/Appellant.

Appeal No. 96-015
Civil Action No 95-0390
February 10, 1997

Argued and Submitted November 15, 1996

Counsel for appellants Torres, Rayphand and Mitchell: Theodore R. Mitchell, Saipan.

Counsel for intervenors Tudela and Sablan: David Wiseman, Saipan.

Counsel for appellees Tenorio and the Government: Office of the Attorney General, Saipan.

Counsel for L & T Group of Companies: Steven Pixley, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and CRUZ, Special Judge.

VILLAGOMEZ, Justice:

## I.

¶1 ██ Attorney Theodore R. Mitchell ("Mitchell") appeals the Superior Court order which disqualified him from further representing the plaintiffs Estanislao T. Torres ("Torres") and Jean H, Rayphand ("Rayphand"), (or collectively "plaintiffs"). Torres and Rayphand appeal from the Superior Court order which removed them from this case and replaced them with the intervenors, Alexandro C. Tudela ("Tudela") and Nicolas C. Sablan ("Sablan"), (or collectively "intervenors"). Mitchell and the plaintiffs also appeal the Superior Court order which found them in contempt of court. We have jurisdiction under 1 CMC § 3102(a).

## II.

¶2 On February 10, 1995, Governor Froilan C. Tenorio, on behalf of the Commonwealth government, leased to defendant L & T Group of Companies ("L & T"), 38,574 square meters of public land located at Lower Navy Hill, Saipan. The lease term is for 25 years with a fixed annual rental totaling three million dollars, or 3% of gross receipts of rental income and 3% of gross receipts of L & T's owned business and affiliated businesses on the premises, whichever is greater.

¶3 Rayphand filed this taxpayer suit pursuant to article 10, § 9 of the Commonwealth Constitution on April 27, 1995, and was joined by Torres on May 3, 1995. Plaintiffs sought to have the Superior Court declare that the Governor committed a breach of trust and that the lease be set aside as null and void. Plaintiffs allege that the fair rental value of the land is at least $13,500,000 for

46

25 years. They further allege that by leasing the land for three million dollars, the Governor breached his fiduciary duty to the people of the Commonwealth.

¶4    On June 7, 1995, the defendants moved to dismiss the complaint, or in the alternative, for summary judgment contending that the plaintiffs did not have standing and that the defendants were entitled to judgment as a matter of law. On November 6, 1996, the Superior Court denied the motion to dismiss, concluding that the plaintiffs did have standing. It also denied the motion for summary judgment concluding that "the Governor, the Secretary and the Director act in a fiduciary capacity regarding the handling of public lands" and that "they are accountable to the same strict standard of fiduciary care, regarding the management of public lands, as were their predecessors,"[1] the Marianas Public Land Corporation.

¶5    At the request of the defendants the court and the parties held a conference on November 21, 1995. At the conference the court encouraged the parties to discuss settlement. On that same day, Mitchell sent a letter to the defendants making an offer for settlement. Also, Mitchell and L & T's attorneys, Steven P. Pixley and David A. Banes, signed a document in which they agreed that the settlement "letter and its contents shall not be disclosed to Judge Manibusan or to any other person in such a way that it will find its way into this case, in any way."[2]

¶6    The next day Mitchell sent a follow-up letter to the defendants offering to settle for "rental of $14.6875 million" and "legal fees calculated on the basis of the lodestar method, in the amount of $2,253,128."[3] This letter further stated that "it may be either accepted or rejected."[4] And "[i]f you attempt to disclose either the existence of this letter, or any of its contents, directly or indirectly to the court, this offer is automatically revoked."[5] On November 27, 1995, at a pretrial conference, Mr. Pixley disclosed to the court the amount of legal fees proposed in Mitchell's letter, without mentioning the amount of the rent proposed in the letter. The next day, the court issued a pretrial order setting trial for February 5, 1996, and requiring that all discovery be completed by December 29, 1995.

¶7    On December 20, 1995, as discovery proceedings were progressing, Mitchell wrote to Mr. Pixley stating,

Because of your earlier breach of the confidentiality of our settlement communications in November, I absolutely would not consider engaging with you (or the government lawyers) in any settlement discussions, communications or negotiations of any kind.

You have disabled yourself from ever, again, in this case, or in any other case in which I am involved, engaging in good faith settlement negotiations. You cannot be trusted to keep the discussions confidential, as they must be, if there is to be any chance of settlement.[6]

¶8    In early December 1995, the defendants moved to disqualify Mitchell from continuing to represent the plaintiffs. The defendants argued that a conflict of interest existed between Rayphand, other CNMI taxpayers, and Mitchell because Rayphand is a law associate of Mitchell. The defendants asserted that Mitchell and Rayphand would place their interest for legal fees over the interest of the remaining taxpayers, as shown by the $2.2 million legal fees demanded in his settlement offer. The Superior Court heard the motion on December 21, 1995, and denied it orally from the bench. In orally denying the motion, the court told Mitchell "that if the Court is shown evidence that plaintiffs' counsel refused settlement offers that are reasonable, then it will be apparent that the remedy is inadequate and will entertain [another] motion for your disqualification."[7]

¶9    The court then issued a written order on January 16, 1996, stating that the court will remove "the conflict by prohibiting the inclusion of attorneys fees in any settlement agreement."[8] The court further stated that "attorneys fees is to be left for judicial determination upon separate petition."[9]

¶10   Discovery matters proceeded through December 1995 and into January 1996. The Superior Court had extended the discovery cutoff date. Certain aspects of discovery were not going smoothly and the parties were filing motions and cross-motions to compel, for protective order, and for sanctions.

¶11   The record shows that the manner in which discoveries were being conducted and the numerous motions and cross-motions to compel, etc. strained the patience of the court. The following exchange at a hearing

---

[1]  Excerpts of Record at 047.

[2]  *Id.* At 076 and 077.

[3]  *Id.* at 061.

[4]  *Id.* at 062.

[5]  *Id.*

---

[6]  *Id.* At 88.

[7]  *Id.* At 382 (emphasis added).

[8]  *Id.* at 108.

[9]  *Id.*

on January 10, 1996, is an example:

> THE COURT: Let's forget about the rules
> MR. MITCHELL: We can't forget about the rules because the rules are what govern you and me and all of us in this proceeding.
> THE COURT: Mr. Mitchell; why don't you keep your mouth shut, alright?
> THE COURT: I don't think that the parties can get anywhere if abuses and harassment continue and the parties do not cooperate with each other to get this matter before the court for resolution.[10]

¶12 On January 15, 1996, the defendants filed a second motion to disqualify Mitchell. The motion was heard on January 19th. The Superior Court took the matter under advisement and issued its written decision granting the motion on January 25th, three days after discovery had been completed and only eleven days before trial.

¶13 At the outset of its decision disqualifying Mitchell, the Superior Court states that the question is whether an attorney in a taxpayer action may represent a plaintiff who is an associate in the attorney's law firm. On page 5 of its Memorandum Decision of January 25, 1996, the court states the issue as follows:

> Whether an attorney in a taxpayer action under article X, § 9 of the Commonwealth Constitution, which provides attorneys fees to a prevailing party, may represent a plaintiff who is an associate in the attorney's law firm.[11]

The court answers this issue on page 9 by stating:

> The court finds that the appearance of impropriety inherent in Rayphand and Mitchell's legal association warrants disqualification. Rayphand's relationship with Mitchell produces the image that she may put the interest of her employer above that of the People . . . . The court finds that the addition of Torres as a second plaintiff is insufficient to dispel the damaging appearance, and orders disqualification.[12]

Thus, the court disqualified Mitchell on the basis that his legal association with Rayphand produces an inherent appearance of impropriety.

---

[10] *Id.* At 385, 386 and 387.

[11] *Id.* At 184.

[12] *Id.* At 188.

## III.

¶14 The plaintiffs raise five issues for our review. However, upon consideration of the whole record on appeal, the briefs, and the oral arguments, we conclude that the issue on Mitchell's disqualification is dispositive of this appeal.

¶15 ■ The Superior Court abused its discretion in disqualifying Mitchell, after discovery had been completed, and only eleven days before trial. Under the facts of this case, Mitchell's disqualification is too drastic. Had the plaintiffs been allowed to proceed to trial on February 5th with Mitchell as their counsel, there would have been no reason to remove them from this case and replace them with the intervenors. Nor would there have been any cause for the contempt of court.

¶16 The issue of attorney's fees as it relates to Mitchell's legal association with Rayphand and the alleged conflict of interest was properly dealt with by the Superior Court when it prohibited the inclusion of attorney's fees in any settlement agreement and required that attorney's fees be determined upon a separate petition. This order prevented Mitchell from negotiating attorney's fees with the opposing parties and he could only petition the court for his fees. Therefore, this matter became moot and could no longer constitute a basis for disqualification. However, the court did use the matter of attorney's fees as a basis for disqualification.

¶17 In determining whether to disqualify Mitchell, the Superior Court applied Rule 23 class action jurisprudence. In following Rule 23, the court looked at the *certification process* and applied its legal requirements to this case. The court states:

> In the certification process, courts consider whether the plaintiff is the true driving force behind the case rather than the attorney's desire for remuneration. This is designed to prevent abuse of the attorney fee provision and to protect the best interest of the non-represented class members.[13]

¶18 A minor problem with applying the legal requirements of the certification process of a Rule 23 class suit to this case is that it was untimely. The certification process occurs in the beginning of the case. In the case at hand, all discoveries had been completed and the matter was ready for trial when the court went through the equivalence of a certification process and disqualified Mitchell. A more serious problem is that the cases cited by the Superior Court as authority for Mitchell's disqualification are

---

[13] *Id.* At 187 [citing *Kramer v. Scientific Control Corp* 534 F. 2d 1085, (3rd Cir. 1976)]

different.

¶19 The main case cited, *Kramer v. Scientific Control Corp.*, 534 F. 2d, *supra*, is distinctively different factually from this case. The *Kramer* court stated that "under circumstances in which an *equitable fund* may be created *from which an attorney's fee may be awarded*, we agree that a plaintiff class representative could not, with complete fidelity to Canon 9, serve as class counsel."[14] The court further states:

> Our inquiry becomes necessary *only because an attorneys' fee may emanate from an equitable fund*, creating a possible conflict between the interests of the plaintiff class members represented by Kramer and the interest of Kramer's partner, Kapustin in maximizing his award as attorney for the class.[15]

The court then concluded by stating:

> No member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a rule 23(b)(3) class action may serve as counsel to the class *if the action might result in the creation of a fund from which an attorneys' fee award would be appropriate.*[16]

¶20 In the case at hand, no fund is to be created from which attorney's fee is to be paid. Attorney's fee for Mitchell is to be determined by the Superior Court.

¶21 Another case relied upon by the Superior Court is *Susman v. Lincoln American Corp.*[17] The *Susman* court noted that "judicial control over class settlements and attorney's fees might, under other circumstances, provide adequate protection for the due process rights of absent class members."[18] This case presents such circumstances. Not only is there no equitable fund to be created from which attorney's fees would be paid, but any attorney's fees to be paid would be determined by the Superior Court. In the third case, *Jaroslawicz v. Safety Clean*

*Corp.*, the court did not allow the plaintiff, Jaroslawicz, to proceed as a representative of the class in a Rule 23 class action because of his relationship with his attorney, Pomerantz Levy.[19] · Jaroslawicz had previously been represented by Pomerantz in at least 42 other class actions and had received at least $167,929 in attorney's fees as co-counsel with Pomerantz.[20] However, the court states that "Jaroslawicz is not barred from continuing with his action on his own behalf, with Pomerantz Levy as counsel."[21] The *Susman* court states the same thing.[22] Here, plaintiffs are not seeking to be certified as class representatives in a Rule 23 class action but are proceeding on their own behalf, albeit as taxpayers. Unlike the above three cases, where plaintiffs and the class members expect to receive money if they prevail, here none of the plaintiffs or taxpayers will receive any money as a result of this case. If the plaintiffs prevail and the lease is terminated, the benefit to all CNMI taxpayers is the protection of their lands from being leased out at an unreasonable rate.

¶22 After the Superior Court ruled that Mitchell was disqualified because of the appearance of impropriety, it went on to discuss other issues which were not listed under the "Statement of Issues." For example, it discussed that an actual conflict exists because Mitchell conditioned his offer of settlement upon a $2.2 million attorney's fees. Again, the matter of attorney's fees is moot because of the order that prohibited attorney's fees in any settlement. Second, the court stated that Mitchell has demonstrated an attitude of animosity that has rendered productive settlement discussion an impossibility; that he has burdened the court with unnecessary motions and heightened the cost of litigation for all concerned. These discussions are not the basis for Mitchell's disqualification, as set forth in the court's decision. In addition, less drastic measures could be used to remedy this second situation. As the court itself stated: "As a policy, the Court does not consider antagonistic behavior as grounds to disqualify in the absence of other distinct manifestations of conflict."[23] Therefore, we will not further address them.

¶23 Finally, we note that Mitchell's refusal to negotiate with attorneys who have breached their promise of confidentiality is not unreasonable. Nor did the court find

---

[14] *Kramer*, 534 F.2d 1085, *supra*. (emphasis added).

[15] *Id*. at 1091 (emphasis added).

[16] *Id*. at 1093 (emphasis added).

[17] *Susman v. Lincoln American Corp.* 561 F.2d 86 (7th Cir. 1977).

[18] *Id*. at 96.

[19] *Jaroslawicz v. Safety Clean Corp.*, 151 F.R.D. 324 (N.D. Ill 1993).

[20] *Id*. at 328.

[21] *Id*. at 330.

[22] *Susman, supra,* at 561 F.2d at 96.

[23] Excerpts of record at 190.

that a "reasonable offer of settlement" was made to and rejected by Mitchell.

## IV.

¶24 For the above reasons, we **REVERSE** the decision which disqualified Mitchell. The disqualification of Mitchell led to the replacement of the plaintiffs by the intervenors and the finding of contempt of court. Therefore, we **REVERSE** the replacement of plaintiffs by intervenors and reinstate Rayphand and Torres as plaintiffs, and Mitchell as their attorney. We **FURTHER REVERSE** the finding of contempt of court. We **REMAND** this case for further proceedings consistent with this opinion.