**In re** Mercedita **Feliciano**, a Minor,

In the Matter of the **Estate**
of Larry Lee **Hillblom**, Deceased,

Milagros **Feliciano**, individually,
and as the Legal Guardian for
Mercedita Feliciano, Petitioner,
**v.**
**Commonwealth Superior Court**,
Respondent.
Original Action No. 98-006
Civil Action Nos. 95-626 & 96-1337
February 4, 1999

Argued and Submitted January 13, 1999

Counsel for petitioner: Michael W. Dotts, Saipan.

Counsel for respondent: Jack W. Londen, San Francisco, CA. (Morrison & Foerster) and Charles R. Rotbart, Saipan.

Before: DEMAPAN, Associate Justice, TAYLOR and LAMORENA, Justices Pro Tem.

PER CURIAM:

¶1 We are asked by petitioners to issue a writ of prohibition against the Superior Court denying the motions regarding actions taken against Milagros Feliciano ("Milagros"). The petitioners ask us to allow the O'Connor, Berman, Dotts & Banes Firm ("the O'Connor firm") and Manuel Teehankee ("Teehankee") to represent Milagros in her capacity as guardian for Mercedita Feliciano ("Mercedita"). We are further asked to direct the Superior Court to start the proceedings that led up to the reference to the Special Master with O'Connor and Teehankee as counsel.[1] We deny the petition in its entirety.

### JURISDICTION AND STANDARD OF REVIEW FOR ISSUANCE OF A WRIT

¶2 ▮ We have jurisdiction over extraordinary writs pursuant to our general supervisory powers codified at 1

---

[1] Petitioners also ask the courts to (1) unseal everything relating to guardianship proceedings; (2) to deny the Executor from participating in the guardianship proceedings; and (3) to not allow attorney Charles Rotbart to represent the interim co-guardian ad litem.

CMC § 3102(b). *Taimanao v. Superior Court*, 4 N.M.I. 94 (1994); *see also Tenorio v. Superior Court*, 1 N.M.I. 1, 7 (1989).

¶3 ■ A writ of prohibition is a drastic remedy that will not be granted except to confine an inferior court to the exercise of its prescribed jurisdiction. *Tenorio v. Superior Court*, 1 N.M.I. 1 (1989). In determining whether to issue a writ, we are guided by the five factors set out in *Tenorio*.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Mercedita, born on December 22, 1995, is a Qualified Heir Claimant ("QHC") to the Hillblom Estate. Milagros is Mercedita's grandmother and guardian ad litem.

From November 1996 until the present, attorney Charles Rotbart ("Rotbart") has represented Milagros in her capacity as guardian ad litem for Mercedita. Rotbart is also currently representing attorney Perry B. Inos ("Inos"), co-guardian ad litem to Mercedita. Milagros is currently represented by three other attorneys, Antonio Atalig ("Atalig"), Teehankee and Jerome Leitner ("Leitner").

¶5 On December 17, 1997, the CNMI Probate Court approved a Settlement Agreement for a share in the Estate of Larry Hillblom reached by the major claimants to the Estate: the Trust and the pretermitted heirs. Mercedita has established a presumption that she is a Qualified Heir Claimant entitling her to receive 15% of the net distributable estate. The probate proceedings have continued since 1997, the year of the settlement, and are expected to continue through at least this year.

¶6 On October 15, 1998, the CNMI Probate Court conducted a hearing on estate administration matters and an in camera hearing to address issues relating to QHC Mercedita.

¶7 On October 19, 1998, the CNMI Probate Court issued an Order Regarding Executor's Ex Parte Petition for Expedited Hearing and Instructions Regarding Guardianship Proceedings and Petition.[3] The Probate Court issued other orders on October 19 that were directed to all Qualified Heir Claimants: an Order to Show Cause Why Services Payments and Interim Payments Should Not Be Suspended or Repaid; an Order Appointing Special Master; and an Order Regarding Inclusion of Executor in Aid of Probate Court Jurisdiction.

¶8 On November 12, 1998, the Probate and Guardianship Courts issued a joint order appointing the Special Master to report to both courts on the six issues enumerated in the October 19 Special Master Order. On November 13, 1998, pursuant to the mandate of the Executor Inclusion Order, the Executor moved for a hearing regarding QHC Feliciano's Interim Payments Accounting, filed on October 28, 1998. In that motion the Executor outlined deficiencies in the accounting that were to be provided by the reporting obligations of the March 9, May 6, and October 19 orders. The Executor sought the appointment of an emergency guardian residing in the Commonwealth until a full hearing could be conducted.

¶9 On November 17, 1998, Milagros moved for the appointment of Fausto R. Preysler Jr. as co-guardian ad litem. On the same day the Probate Court and Guardianship Court jointly issued a "Special Emergency Reference to Special Master" authorizing and directing Special Master Rexford C. Kosack to investigate and report on issues relating to Mercedita and her guardian ad litem, Milagros. The court concurrently issued a sua sponte appointment of Inos as Mercedita's emergency temporary co-guardian ad litem.

¶10 On November 18, 1998, Milagros appeared with off-island attorney Teehankee and local attorney Michael Dotts ("Dotts"), both seeking permission to participate in the hearing as counsel for Milagros in her capacity as guardian ad litem and to substitute Teehankee for Rotbart as lead counsel for Milagros. The Special Master denied the oral motion to substitute, directed Milagros to file a formal motion seeking a substitution from the court. Teehankee, Dotts and Preysler were denied participation in the proceedings unless the Commonwealth courts expressly permitted participation. The Special Master ordered a medical examination of Mercedita and issued a standing order of confidentiality governing all proceedings concerning QHC Mercedita.

¶11 On November 19, 1998, Inos filed an Ex Parte Emergency for Approval of Retention of Counsel motion to retain Rotbart as counsel. This motion to retain counsel

---

[2] These five factors are:

    1. The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired;

    2. The petitioner will be damaged or prejudiced in a way not correctable on appeal;

    3. The lower court's order is clearly erroneous as a matter of law;

    4. The lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and

    5. The lower court's order raises new and important problems, or issues of law of first impression.

*Tenorio v. Superior Court*, 1 N.M.I. 1 (1989); *see also Commonwealth v. Superior Court*, 1 N.M.I. 287, 294-95 (1990).

[3] By its October 19, 1998, Order Regarding Inclusion of Executor in Aid of Probate Court Jurisdiction, the Probate Court has ordered the Executor to participate in Guardianship matters in furtherance of the Executor's duties pursuant to Com. R. Civ. P. 10 and 12. The Executor has also been instructed to participate in the Special Master Proceedings by references jointly issued on November 11 and 17, 1998.

of record was joined the next day by The Bank of Saipan as Executor of the Estate. Inos stated he believed it was not in the best interest of Mercedita to terminate Rotbart as counsel.

¶12 On November 20, 1998, Milagros moved for a substitution of counsel. The motion sought to dismiss Rotbart and to retain Teehankee along with attorneys Dotts and O'Connor of the O'Connor firm and Atalig, as local counsel. Atalig also filed an application for Teehankee to appear pro hac vice. Milagros also filed papers seeking to have the motion to substitute heard on shortened time. The motions were signed by O'Connor and Teehankee.

¶13 The Executor opposed the substitution of Teehankee and joined Inos' retention motion. The court issued an order which (1) ordered the attendance of Milagros, Mercedes, and Mercedita at the scheduled hearing on November 27, 1998; (2) suspended the pro hac vice admission of Teehankee until the November 27, 1998 hearing; (3) held Rotbart in contempt for failing to have his clients appear pursuant to the October 19, 1998, order; (4) ordered a special hearing in the attorney retention and substitution motions on November 24, 1998; and (5) ordered the confidentiality of all proceedings. *In the Matter of the Estate of Larry Lee Hillblom*, No. 96-0626 (N.M.I. Super. Ct. Nov. 23, 1998) (Corrected and Amended Order).

¶14 At the November 24, 1998, hearing, the court issued its written order denying the motion to substitute counsel for Mercedita and the motion to amend the Special Emergency Reference. *In re Mercedita Feliciano, a Minor,* No 96-1337 (N.M.I Super. Ct. Nov. 27, 1998) (Order Denying Motion to Substitute Counsel). The court determined that substitution of counsel was not in the best interest of QHC Feliciano, although the court specifically approved of the representation by Teehankee, through local counsel Atalig for Milagros in her individual capacity in the Special Master proceedings. *Id.* The Motion to Substitute Counsel was denied on a number of grounds. *Id.* Inos's motion for retention of Rotbart as counsel for QHC Feliciano was granted. *Id.* Teehankee was later joined in his representation of Milagros by off-island counsel Leitner.

¶15 On November 30, 1998, Rotbart filed a motion to withdraw as counsel of record for Milagros. Through this motion, Rotbart intended to disassociate himself from the co-guardian ad litem Milagros while continuing to represent QHC Feliciano through co-guardian ad litem Inos. On January 6, 1999, the trial court issued an order denying the motion for stay, and motions to disqualify, and for Rotbart to withdraw as counsel.

¶16 On December 1, 1998, the trial court issued an order pursuant to the November 27, 1998, hearing stating that: (1) the attendance requirement of the Felicianos was satisfied; (2) interim payments would be made by the Executor to Inos, to be placed in a trust account and distributed by Inos upon his own discretion in the best interest of QHC Feliciano, after consultation with Milagros Feliciano; (3) the contempt finding against Rotbart was vacated; and (4) the suspension of Teehankee's pro hac vice was lifted to permit him to represent Milagros in her individual capacity. The Court again ordered that all proceedings and communications in the matter be confidential, under seal and to be served only upon the Special Master, the Executor, Rotbart for QHC Feliciano and Atalig as local counsel for Teehankee, in his role as attorney for Milagros.

¶17 On December 11, 1998, Milagros with her local counsel Atalig filed with the trial court a Motion to Disqualify Counsel seeking to remove Rotbart from representing QHC Feliciano through co-guardian ad litem Inos.

¶18 On January 6, 1999, "based upon the need to responsibly manage proceedings and upon inadequate arguments" the trial court denied the motion to withdraw as counsel filed by Rotbart and the motion to disqualify counsel filed by Milagros. The court granted leave to resubmit upon submission of findings by the Special Master. *In re Mercedita Feliciano, a Minor,* No. 96-1337 (N.M.I. Sup. Ct. Jan 6, 1999) (Order Denying Motion For Stay; Motions to Disqualify and to Withdraw as Counsel).

¶19 Based on these orders, petitioners timely filed this writ of mandamus.

## ANALYSIS

### I. Extraordinary Writs in General

¶20 Before addressing the grounds asserted for issuance of the writ requested, we need to first examine this Court's jurisdictional basis for entertaining any petition for issuance of extraordinary writs. 1 CMC § 3102(b) provides as follows:

> The Supreme Court has original jurisdiction but not exclusive jurisdiction to issue writs of mandamus . . . and all other writs or orders necessary and appropriate to the full exercise of its appellate and supervisory jurisdiction.

¶21 Like the federal All Writs Statute of 28 U.S.C. § 1651, authorizing federal appellate courts to issue writs, our all writs statute authorizes this Court to issue any writ necessary in aid of its appellate jurisdiction. *Tenorio v. Superior Court,* 1 N.M.I. at 6-7.

¶22 ■ The United States Supreme Court has given general guidance on when we may issue writs:

> The traditional use of the writ in aid of appellate

jurisdiction both at common law and in the federal courts has been to confine an inferior court to lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.

*American Fidelity Fire Insurance Co. v. United States District Court for the Northern District of California*, 538 F.2d 1371, 1374 (9th Cir. 1976).

¶23 ██ The issue before us should not be whether the district court was in error, but whether the disqualification issue was so far afield that a writ of mandamus, rather than appeal, is a permissible method of review. In establishing the general rule that only final judgments are reviewable, the Unites Stated Congress contemplated that some individual convenience would be sacrificed for the greater overall effectiveness and efficiency of the appellate process. *American Fidelity*, 538 F.2d at 1376; *see also Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S. Ct. 938, 941, 87 L. Ed. 1185 (1943). Even though we have power to grant the writ, the power is discretionary and wisdom dictates a thorough examination of all the facts to be sure the issuance is appropriate. *Id.*

¶24 ██ In an ordinary civil case, an order either disqualifying or refusing to disqualify a law firm is not appealable when entered, because it is not deemed "final" within the meaning of 28 U.S.C. § 1291, which governs the appeal of such cases. The party complaining about the order must wait until there is final judgment. *Develieg Inc. v. Devleig-Bullard, Inc.,* 56 F.3d 32, 33 (7th Cir. 1995); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985). In orders denying disqualification motions, pointing to the frequent use of such appeals as tools for harassment and delay, courts have overruled prior decision and have held denial orders as non-appealable. *In re Continental Inv. Corp.,* 637 F.2d 1,5 (1st Cir. 1980). "[E]ven were a particular disqualification motion to raise important questions of law, no interlocutory appeal would lie from the denial of such a motion in the absence of showing that irreparable harm might otherwise result." *Id.,* at 7. Only "in the exceptional case, the movant may petition this court for a writ of mandamus." *Id.*

¶25 ██ The Ninth Circuit has a finality rule intended to save time and resources, both ours and the parties. *In re Stanton,* 766 F.2d 1283, 1287 (9th Cir. 1985), *see also In re Martinez,* 721 F.2d 262, 2625 (9th Cir. 1983). An appellate process will likely be much shorter if we decline jurisdiction and await "ultimate review on all combined issues." *In re Stanton*, 766 F.2d at 1288. Prudent appellate procedure requires that we do not sever some issues that we can decide from those that we cannot decide. Instead we should take a case as a whole whenever possible. *Id.*

¶26 ██ There are dangers to unprincipled use of peremptory writs, as for example, the possibility that its use would be an impermissible alternative to the normal appellate process. *Tenorio*, 1 N.M.I. at 8. Its abuse could operate to undermine the mutual respect generally existing between trial and appellate courts. *Id.* "While a function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal, it may not appropriately be used merely as a substitute for the appeal procedure prescribed by the statute." *American Fidelity*, 538 F.2d at 1374; *see also Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S. Ct. 938, 941, 87 L. Ed. 1185 (1943).

¶27 ██ Courts traditionally have not considered remands final decisions because of the policy disfavoring piecemeal appeals. *In re Stanton*, 766 F.2d at 1287. The policy against piecemeal appeals is frustrated in the very case before us.

## II. The Petition Fails to Meet the Burden Necessary to Justify the Extraordinary Relief Requested

¶28 ██ A petition for a writ of prohibition or mandamus is a drastic remedy which should be exercised only in extraordinary situations, that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy. *Tenorio*, 1 N.M.I. at 9. There are dangers to an unprincipled use of peremptory writs, as for example, the possibility that its use would be an impermissible alternative to the normal appellate process. Its abuse could operate to undermine the mutual respect generally existing between trial and appellate courts. *Id.* at 8. A petition seeking such a writ is judged according to five guidelines set out in *Tenorio, Id.* at 4.

¶29 We hold that the petitioner fails to establish the presence here of any of the five *Tenorio* factors to warrant the extraordinary relief requested for a ruling in their favor, as explained fully below.

### A. The Party Seeking the Writ Has No Other Adequate Means, Such As Direct Appeal, to Attain the Relief Desired

¶30 A denial of a motion to substitute counsel is reviewed after trial is complete and a final judgment is entered on the merits. *Olopai v. Hillblom*, 3 N.M.I. 528, 533 (1993). Milagros argues that if the O'Connor firm is not allowed an appearance then she is shut out of her only chance at a fair hearing. Milagros has an adequate remedy of appeal, after judgment is final, during which time she may challenge the order as erroneously granted.

### B. The Petitioner Will Be Damaged or Prejudiced In A Way Not Correctable On Appeal

¶31 Milagros argues the threatened harm is personal and she is forced to proceed without counsel of her choice. Milagros claims she will suffer the personal harm of standing trial all alone. The very order from the Superior Court approves of Milagros' continuing representation in her individual capacity by counsel of her own choosing throughout the special master proceedings. Milagros is currently represented in her personal capacity by her lead attorneys of choice Teehankee and Leitner together with her local counsel of choice Atalig. There has been no suggestion that these individual counselors are in any way incompetent to protect her interests. Milagros is free to hire a different counsel who has no conflict in the case to represent her.

### C. The Lower Court's Order is Not Clearly Erroneous as a Matter of Law

¶32 The Superior Court's order is not clearly erroneous for the reason's that we set forth below.

The fourth *Tenorio* factor, that the lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules and the fifth factor that the lower court's order raises new and important problems, or issues of law of first impression will not be addressed as they are irrelevant to the present motion.

### III. The Superior Court's Decision to Deny the Motion to Substitute the O'Connor Firm Is Not Erroneous

¶33 The proposed substitution of the O'Connor firm and Atalig as local counsel along with Teehankee as counsel for QHC Mercedita in place of counsel of record Rotbart. The trial court's decision included the determination that the O'Connor firm possessed conflicts that would prevent its representation of Milagros of QHC Mercedita in the proceedings.

### A. Milagros Received Full Due Process in Connection with her Motion to Substitute Counsel

¶34 Milagros argues in support of the petition, that her due process rights were violated by the denial of the motion to substitute the O'Connor firm to represent Milagros in her capacity as guardian ad litem.

¶35 ■ The Due Process clause of the Fourteenth Amendment to the U.S. Constitution, as well as the Commonwealth Constitution, ensures certain procedural safeguards protecting individual's rights. Due process requires that a party be provided with notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 70 S. Ct. 652, 339 U.S. 306, 314, 94 L. Ed. 865 (1950). Milagros had adequate notice and an opportunity to be heard in respect to the motion to substitute counsel. Milagros herself filed the motion to substitute and requested that the matter be heard on shortened time. Milagros was personally present and represented by counsel at the hearing for the motion. The Superior Court in it's order stated it considered declarations filed by Milagros after the deadline for their submission. *In re Mercedita Feliciano*, No. 96-1337 (N.M.I. Super. Ct. Nov. 27, 1998) (Order Denying Motion to Substitute Counsel at 2).

¶36 Milagros continues to have a *right to counsel*, but *not to conflicted counsel*. Milagros' due process rights were not violated. No order from the trial court has precluded Milagros from retaining counsel. The trial court expressly approves of Milagros continuing representation in her individual capacity by counsel of choice Teehankee and Atalig.

### B. The Superior Court Properly Found the Milagros Attempted Substitution for Counsel was Inappropriate

¶37 Petitioners contend the trial court was erroneous in disqualifying Dotts and Teehankee for their potential representation of Milagros as guardian ad litem. We find no such error.

¶38 ■ Whether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court. *Comden v. Superior Court*, 20 Cal. 3d 906, 969 (1978). In exercising that discretion, the trial court is required to make a reasoned judgment which complies with the legal principles and policies applicable to the issue at hand. *Bullis v. Security Pac. Nat. Bank*, 21 Cal.3d 801, 805 (1978).

#### 1. Milagros Failed to Demonstrate that Substitution of Counsel Was in the Best Interest of Mercedita Feliciano

¶39 ■ The court has a duty to protect the rights of the minor. *Berry v. Chaplin*, 74 Cal. App. 2d 652, 657; 169 P.2d 442, 447 (1946). In effect, the court is the guardian and the guardian ad litem is an officer and agent of the court who appointed him. *Id.*; *see also Sarracino v. Superior Court*, 13 Cal. 3d 1, 13 (1974); (A guardian ad litem is appointed by the court, remains at all times an officer of the court. *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9thCir. 1978)). It is the duty of the guardian and the attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected. *Id.*; *see also In re Christina B*, 19 Cal. App. 4th 1441 (1993).

¶40 Whether a guardian ad litem is competent may be determined at any stage of the court proceedings and is subject to the continuing discretion and approval of the court. *Fong Sik Leung v. Dulles*, 226 F.2d 74,82 (9th Cir. 1955). Similarly, attorneys representing the interests of

the minor must be approved by and are subject to the same exercise of discretionary supervision by the court. *Torres v. Freidman*, 169 Cal. App. 3d 880 (1985).

¶41 ▊ In the instant case, the Court is concerned with what is in the best interest of Mercedita. Because the court has a duty to see that the minor's rights are not unfairly compromised by those appointed to represent [her], a California appellate court held that an attorney must obtain court approval prior to withdrawal as attorney of record for a minor appearing through a guardian ad litem. *Torres v. Freidman*, 169 Cal. App. 3d 880,888 (1985). The consent of the guardian ad litem is insufficient to execute withdrawal of counsel without court approval.

¶42 The need for court approval of an attorney's withdrawal from representation of a minor who appears through a guardian ad litem is apparent from the circumstances of this case. The guardian ad litem here tried to terminate the services of Rotbart and to retain the services of Teehankee, Atalig, and the O'Connor firm by circumventing the Superior Court's authority. The Special Master ordered Milagros to apply to the Superior Court for a motion to substitute. The Superior Court has referred to the Special Master for issues involving the compliance of court orders involving the guardian and the guardian ad litem's performances. Motions to substitute or withdraw as counsel for a guardian are left to the exercise of the judge's discretion. *Torres v. Friedman*, 169 Cal. App. 3d 880, 888 (1985).

¶43 The courts' duties are to Mercedita. Absent from the motion to substitute was the showing that the substitution would be in Mercedita's rather than in Milagros' best interest. Because Mercedita is a minor and lacks capacity to ensure that her agents and fiduciaries are complying with their obligations, the lower court has the power and the on-going duty to monitor the fiduciaries appointment to represent the child's best interest.

## 2. Numerous Conflicts with the O'Connor Firm and Teehankee

¶44 ▊ The Superior Court was correct in denying the substitution of counsel because the O'Connor firm and Teehankee have numerous conflicts of interest which would prevent them from representing Milagros as guardian ad litem. The relevant test for disqualification is whether the former representation is "substantially related" to the current representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). The ethical rules applicable the CNMI are the substantial relationship test:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest's are

materially adverse to the interests of the former client unless the former client consents after consultation.

A.B.A. Model Rules of Professional Conduct, Rule 1.9(a).[4] Attorneys may not represent a client in any other matter that threatens the use of a former client's confidences. *Sheffield v. State Bar of California*, 22 Cal. 2d 627, 630 (1943).

¶45 If the existence of a substantial relationship between the two representations is established, the court will conclusively presume that the attorney possesses confidential information adverse to the former client and order disqualification. *Henriksen v. Great American Savings and Loan*, 11 Cal. App. 4th 109, 114 (1992). The Superior Court did not abuse its discretion in finding the Dotts and Teehankee's proposed representation of Milagros as guardian ad litem would have been substantially related to their prior representation of the Executor.

### a. O'Connor Firm's Attorney-Client and Fiduciary Obligations to the Estate's Assets

▊ The determination that the O'Connor firm should be disqualified rests upon notorious conflicts that are a matter of record. Dotts and O'Connor had represented Hillblom in his life time in connection with a number of assets in the Estate. Among other contacts, Dotts was Hillblom's agent and attorney in fact, and managed Hillblom's business affairs in Saipan during Hillblom's absence from Saipan. O'Connor was personally involved in connection with Hillblom's businesses. Dotts and O'Connor both represented Hillblom during his lifetime and, by participating in representation, have continuing obligations to the Estate, through the Executor. They have the obligation to guard Hillblom's client confidences and not to represent parties adverse to the Estate in connection with the Estate. The legal rights Hillblom could have asserted during his life continue after his death through the Executor.

### b. The Nocasa Representation

¶46 ▊ The most obvious "substantial relationship" demanding disqualification is that the O'Connor firm represents Josephine Nocasa ("Nocasa") in obtaining a settlement of claim against the Hillblom Estate. In September 1995, Nocasa filed a claim against the Estate

---

[4] The CNMI enacted the A.B.A. Model Rules of Professional Conduct as adopted by the American Bar Association in September 30, 1989. Com. Disc. R. 2

alleging that she was a pretermitted common-law spouse, entitled to 50% of the Estate. Nocasa's claim, as that of a common-law wife, could potentially entitle her to half the estate. The O'Connor firm continues to represent Nocasa while she waits to be paid.

¶47 The representation of Nocasa in her claim against the Estate is directly adverse to the interests of Mercedita in the same proceeding. Mercedita and Nocasa could have potential claims against one another if the settlement agreements are set aside. In such a contentious case, we do not find this solely as conjecture, but a distinct possibility which Mercedita must be protected against. We agree with the trial court that the existence of separate settlement agreements with the Executor is not enough to overcome that conflict.

### c. Teehankee Conflicts of Interest

¶48 Teehankee also has conflicts of interests with the Executor. Both of the firms Teehankee is associated with, LeBoeuf, Lamb, Green & MacRae and the Romulo Mabanta Buenaventura Sayoc & DeLos Angeles firms, have previously represented the Executor in the same matter. As the Superior Court noticed on Teehankee's application to proceed *pro hac vice*, he described himself as "international counsel to the firm of Romulo Mabanta Buenaventura Sayoc & DeLos Angeles and as of counsel/Asia adviser to the firm of LeBoeuf, Lamb, Green & MacRae." *In re Mercedita Feliciano, a minor*, No. 96-1337 (N.M.I. Super. Ct. Nov. 27, 1998) (Order Denying Motion to Substitute Counsel). The Superior Court correctly found that Teehankee's proposed representation of Milagros as guardian ad litem would be substantially related to his firm's prior representation of the Executor. We find the Superior Court did not err in concluding that the current proposed representation shared common factual and legal issues involved with the former representations.

### 3. Conflicts Disqualifying a Law Firm

¶49 There is no dispute for this Court that in the Nocasa representation, O'Connor acquired confidential information regarding the representation. The representation has tainted the O'Connor firm. The Superior Court did not err by failing to instruct on implementing appropriate screening measures for O'Connor's firm to avoid conflicts given the plethora of conflicts that already justified disqualification.[5]

¶50 ▮ The cases presented to this court to allow screening measures were cases that enabled a firm to represent a current client by screening members of that firm who had previously worked on cases in conflict. Here, the conflicts presented by Teehankee, Dotts and the O'Connor firm all relate to the same matter, the Hillblom Estate. The conflicts are substantial and are not speculative but substantial and justify disqualification of the entire firm.[6]

¶51 The attorneys in the law firm of one who is disqualified from representing a client are also vicariously disqualified. The vicarious disqualification principle is set forth in our ethical rules, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing along would be prohibited from doing so". A.B.A. Model Rules of Professional Conduct, Rule 1.10(a). When a lawyer is required to decline employment or is disqualified by a conflict of interest, disqualification is imputed to the entire firm. *Allen v. Academic Games Leagues of America, Inc.*, 831 F. Supp. 785, 790 (C.D. Cal. 1993). This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit. *Henriksen*, 11 Cal. App. 4th at 115.

### 4. Waivers

¶52 ▮ Where the two matters involve the same factual context and legal questions, a substantial relationship exists, and the attorney cannot proceed with out a written waiver from both clients. *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445 (1991). Nocasa has consented to the O'Connor firm representing both herself and the Felicianos. Dotts and O'Connor's waivers from clients other than the Estate did not cure · their conflicts with the Executor or with Mercedita's interests as Distributee of the Estate. We consider it is the non-delegable responsibility of the court to obtain the adherence of its bar to proper ethical standards in the management of cases before it. *Kesselhaut v. United States*, 555 F.2d 791, 794 (1977). Accordingly the consent of the adverse party would not necessarily compel

---

▮ that case. The attorney in question had already been serving as counsel, and not trying to get on as counsel.

[6] Petitioner cites to *Kesselhaut* v. *United States*, 555 F.2d. 791 (1977) that the *Kesselhaut's* court's endorsement of the ABA Ethic's Committee's Formal Opinion reflects a "rational reluctance to deprive clients of representation by large firms in a large proportion of cases." However as the court went on the say "[e]ach case depends on its own merits". The present case can be distinguished on its merits as we are not dealing with a large law firm.

---

[5] Petitioners cite to *Torres v. Tenorio*, 1997 MP 2 ¶15, 5 N.M.I. 46, to stand for attorney's disqualification as "too drastic"; however this Court specifically referenced the particular facts of

our assent to a flagrant conflict of interest. *Id.*

## CONCLUSION

¶53 The parties have called to our attention to various assertions relating to the issues. The Superior Court properly denied the motion to substitute counsel. The writ of mandamus did not meet the criteria set out in *Tenorio v. Superior Court, supra.* Accordingly, the petition for a Writ of Prohibition is **DENIED.**

The Court will address additional orders and concerns we have relating to this case.

### 1. Unseal the Proceedings

¶54 We **ORDER** all proceedings at the trial court and special master level to be open and unsealed. Any party affected may seek an order of the Superior Court to seal or conduct closed hearings permitted by statute or court rules that are in the best interest of a particular minor child.

### 2. Ex Parte Communications

¶55 Except for good cause, all counsel, officers of the court and parties shall not make ex parte communications with the court and the special master.

### 3. Costs

¶56 Counsel is hereby placed on **NOTICE** that the court is concerned that the other potential "heirs" and distributees are incurring costs by proceedings such as this.

### 4. Interlocutory Appeals

¶57 It is further **ORDERED** that no more interlocutory appeals be filed without permission of this court.

### 5. Ex Parte Applications

¶58 It is further **ORDERED** that no ex parte orders shall be issued unless 24 hours notice is given to all parties of the proposed orders and a hearing set within ten days.

¶59 Except for good cause shown, all applications for ex parte orders shall be heard in open court. Such applications shall be accompanied by a declaration containing the following.
1. Name of counsel of the opposing party, if known:
2. Who opposes the application; and
3. Which counsel or parties have expressed an intention to be present at the time the application will be presented to the court.

¶60 Parties should be given the opportunity to object or agree to the proposed ex parte orders. An ex parte order issued henceforth shall be a temporary order subject to the hearing within 10 days to make the temporary-order a final order.

### 6. Attorney Rotbart is Excused

¶61 Attorney Rotbart is in conflict and is hereby **EXCUSED** from further participation in this matter. Attorney Rotbart is disqualified because he is in conflict with Milagros, the guardian ad litem. Rotbart has used the confidences gained in his representation of Milagros against Milagros. Milagros, as guardian ad litem, is free to choose another attorney who is not in conflict. Milagros terminated Rotbart as counsel. Rotbart petitioned to be let go as counsel. The termination of Rotbart effectively allows Rotbart as former and current counsel to use all that he learned from representing Milagros against her when his new client, the interim co guardian ad litem Inos, participates in proceedings involving guardian ad litem Milagros. Rotbart aligning himself against Milagros and then disclosing privileged communications to her detriment would be a violation of Rotbart's fiduciary obligations to his client Milagros.

### 7. Inos is Excused

¶62 Finally, attorney Perry Inos is hereby **EXCUSED** from further participation from this case on the basis that Milagros is presently the continuing guardian ad litem for the minor child Mercedita Feliciano.