Filed 3/12/21  Stone v. Byers CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CRISTINA A. STONE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DOUGLAS BYERS et al.,<br><br>Defendants and Respondents. | F077331<br><br>(Super. Ct. No. 445611)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Timothy W. Salter, Judge.

Cristina A. Stone, in pro. per., for Plaintiff and Appellant.

Law Office of Lawrence C. Beaver, and Lawrence C. Beaver, for Defendants and Respondents.

-ooOoo-

This case involves a dispute over a family trust. Respondents, Douglas Byers and Kristen Geller, were the successor trustees and primary beneficiaries of the trust. Following the deaths of respondents' parents, who were the settlors and original trustees, all trust assets were distributed among and between respondents. After those distributions were made, the trust was terminated.

Appellant, Cristina Stone, is the daughter of respondent Douglas Byers. She claims to be an intended beneficiary who was wrongfully deprived of a share of the trust assets. The probate court rejected her contentions and entered a judgment in favor of respondents.

Appellant is a self-represented litigant. Her briefing alleges various procedural "irregularities" and evidentiary errors. Most of the issues were not raised below and have been forfeited. The remaining claims fail due to appellant's inability to demonstrate reversible error. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, respondents' parents created what was formally entitled "The Jon and Kay Byers Family Trust, dated November 25, 2002, Jon L. Byers and Kay M. Byers, Trustors and Jon L. Byers, Kay M. Byers, Douglas B. Byers, and/or Kristen L. Byers, Trustees"[1] (bold omitted; hereinafter "the trust"). As the title indicates, Jon and Kay Byers were the settlors and original trustees of the trust. Respondents were designated as the trust's "Successor Trustees" and "Primary Beneficiaries."

The main trust document consists of 48 numbered pages, including signature pages. The settlors reportedly drafted the instrument without the assistance of legal counsel. Each page of the main document contains a three-line footer, which reads: "Byers Revocable Living Trust [¶] © Copyright The Estate Plan ® 2002 All Rights Reserved. [¶] Page [_]."

---

[1] Kristen L. Byers is the maiden name of respondent Kristen Geller.

The 48-page document contains references to "Schedule C." The existence of multiple documents labeled "Schedule C" is undisputed, but the parties disagree over whether those items were physically attached to the main document. Two of the additional pages had the same footer as the main document and were marked as "Page 51" and "Page 52," but those pages were almost entirely blank. A three-page document, which the probate court accurately described as being written like a separate trust, identified appellant by name as one of several "Eligible Beneficiaries." Subsequent references in this opinion to "Schedule C" are to the three-page document.

Schedule C is unsigned, undated, and contains no initials or handwriting. Unlike the other documents, there is no footer text or page numbers. Schedule C states, in relevant part, "This Trust is established for the purpose of establishing an extended family solidarity, to fund charitable giving and encourage experiences and behavior among our heirs that Kay [Byers] and [Jon Byers] have come to value. [¶] *The Trust is to be funded initially with the proceeds of life insurance on Jon's life.*" (Italics added.)

Jon Byers died in 2003. There was a $250,000 insurance policy on his life, but the beneficiary was the surviving settlor, Kay Byers, not the trust. Kay Byers used the life insurance proceeds to purchase a single premium annuity. She designated herself as the annuitant and respondents as her beneficiaries.

Kay Byers died in 2010. Following her death, respondents obtained legal advice regarding their rights and obligations under the trust. In reliance on the advice of counsel, respondents distributed all trust assets to themselves. Once the value of the trust dropped below a certain amount, respondents invoked a provision allowing them to terminate it.

In 2014, appellant filed a petition to establish the existence of the trust and her rights as a beneficiary thereunder. (See Prob. Code, § 17200 et seq.) She also sought to

compel an accounting. (*Id.*, §§ 16060 et seq., 17200, subd. (b)(7)(C).) All claims were dependent upon the validity and effect of Schedule C.

Appellant's minor children were originally named as additional petitioners. This was done in further reliance upon Schedule C, which identified as "Eligible Beneficiaries" "all of the children born of the Byers Family Blood Line." An amended petition, filed in 2015, identified appellant's husband as the children's guardian ad litem. However, the husband was not an attorney, and the probate court eventually dismissed the children from the action because they were not represented by counsel. That dismissal order is the subject of a claim in this appeal.

A bench trial was held on November 1, 2017. The proceedings lasted approximately two hours and concluded on the same date. Appellant attempted to prove that the provisions of Schedule C reflected the testamentary intent of settlor Jon Byers. Jon Byers's sister, Susan Byers, and his friend and business associate, Sudhir Sahni, testified on appellant's behalf. Appellant also examined respondent Kristen Geller as an adverse witness.

Respondents called one witness: a Stanislaus County probate lawyer named Ronald William Hillberg. Attorney Hillberg testified as both a percipient and expert witness. He had personal knowledge of certain facts from having served as legal counsel for respondents in earlier stages of the case. He also may have had a prior attorney/client relationship with settlor Kay Byers, but the record is not entirely clear on that point. Regarding his expert qualifications, the witness testified to being "a certified specialist in estate planning, probate, and trust law."

As discussed in the expert's testimony, the death of Kay Byers triggered a provision in the 48-page document requiring division of the trust assets "into equal separate shares to provide one (1) share each for Douglas B. Byers and Kristen L. Byers, the Primary Beneficiaries of the Trust Estate." This effectively created two subtrusts.

The subtrusts were to be "held, managed and distributed as provided in [a separate] provision entitled 'Distribution of Trust Assets.'" (Bold emphasis omitted.)

Under the "Distribution of Trust Assets" provision, the subtrusts were to be "distributed subject to the provisions and specifications of the 'Schedule C' attached to [the 48-page document]." Attorney Hillberg testified that no additional pages were attached to "the actual signed trust." However, "in the booklet that came along with the whole trust document," there was a "binder labeled 'Schedule C' " containing the aforementioned multiple documents bearing the same label.

As noted above, the provisions of Schedule C refer to a "Trust" that was "to be funded initially with the proceeds of life insurance on [Jon Byers's] life." However, the beneficiary of the life insurance policy was Kay Byers, and she used those proceeds to purchase an annuity. Instead of leaving the remainder of the annuity to the trust, she named respondents as her beneficiaries. Therefore, all proceeds from Jon Byers's life insurance policy were distributed outside of the trust. Attorney Hillberg opined that this was permissible "because Kay Byers had complete freedom to use those funds in any way she chose."

Because Schedule C was not funded pursuant to its express terms, it was attorney Hillberg's professional opinion that "it never came to fruition." He had thus counseled respondents to act pursuant to other provisions in the 48-page document. One such provision authorized respondents to take distributions from their respective subtrusts "for the furtherance of worthwhile personal, professional or business goals," including "reasonable sums for a partial or complete down-payment on a home." Another provision authorized their termination of the trust and/or any subtrust if its "fair market value" dropped to $15,000 or less.

The probate court ruled in favor of respondents on two alternative grounds. The judgment states: "[Schedule] C, which petitioner maintained was part of the trust, lacks

5.

sufficient foundation and authentication to be considered part of the trust. However, even if the same was to be authenticated, it was a dry trust in that it was never funded and that evidence educed found [sic] life insurance proceeds went elsewhere than to the funding of the trust. Accordingly, the Court finds in favor of respondents as to all causes of action and holds this matter as dismissed with prejudice."[2]

Appellant unsuccessfully moved for a new trial. The notice of appeal was timely filed in April 2018.

## DISCUSSION

### *Standard of Review*

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Questions of law are reviewed de novo, meaning the appellate court exercises its independent judgment to resolve legal issues (e.g., the interpretation of statutory language). (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387; *Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617.) Discretionary trial court rulings are reviewed under the abuse of discretion standard; such rulings are overturned "only upon a showing of a 'clear case of abuse' and 'a miscarriage of justice.' " (*Hernandez v. Superior Court* (1992) 9 Cal.App.4th 1183, 1190, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

---

[2] According to California case law, a "dry trust" is "a trust wherein the trustees would have no actual responsibilities as such and no active duties to perform." (*Estate of Shaw* (1926) 198 Cal. 352, 363; accord, *Bariffi v. Longridge Development Co.* (1958) 156 Cal.App.2d 583, 590-591.) However, the term is sometimes used to describe an " 'empty' trust," i.e., "a trust formed without assets." (*Draper v. Colvin* (8th Cir. 2015) 779 F.3d 556, 562, fn. 3.) The probate court clearly intended for the latter definition to apply. Its oral ruling at the conclusion of trial included these statements: "[E]ven if you were to consider this a separate trust and it was duly executed, which this one is not, you basically have here a dry trust. Schedule C was never funded. And, therefore, it lacks any effectiveness.… [B]ecause it was never funded, at best it's a dry trust."

6.

Self-represented litigants are held to the same standards and procedural rules as parties represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.) Appellate briefs must state each point under a separate heading or subheading (Cal. Rules of Court, rule 8.204(a)(1)(B)), and issues not presented in this manner are considered forfeited (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656). "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) "These well-settled rules of appellate practice are not mere technicalities. They ensure that opposing parties are fairly apprised of contentions so as to afford a full and fair opportunity to respond." (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.)

Appellant does not directly challenge the trial court's interpretation of the trust instrument. She seeks the remedy of a new trial based on alleged procedural and evidentiary errors. Our review is limited to those specific claims, and we address them in the order in which they are presented in appellant's opening brief.

### *Testimony of Attorney Hillberg*

**Additional Background**

Respondents were represented by attorney Hillberg during the first year of the litigation. In July 2015, appellant filed an ex parte application seeking to a continue the trial date. In a written response, respondents made these statements: "Respondents agree that the trial date needs to be extended. In a meeting on July 6, 2015, the Petitioners advised the attorney for Respondents [i.e., Hillberg] that they intended to call him as a witness in this matter. Accordingly, it is necessary for Respondents to secure new trial counsel, which they are in the process of doing."[3]

---

[3]   In her briefing below and on appeal, appellant has alleged that Hillberg was "disqualified" and "removed" from the case by the probate court. She makes numerous references to language in a minute order from August 21, 2015, which says, "Mr.

7.

In September 2015, Lawrence C. Beaver replaced Hillberg as respondents' attorney of record. In November 2017, Hillberg testified as a witness on respondents' behalf. On the morning of trial, just as appellant was about to begin her case-in-chief, respondents sought permission to call Hillberg out of order. The reason given was a personal matter involving the hospitalization of a family member.

The trial judge said, "I'll listen to any objection [appellant] may wish to state on this. However, I think under the circumstances, you know, we do often grant the right to call a witness out of order, especially if they're an expert witness, and in this case it sounds like there's a very good reason for that." Appellant replied, "Sure. I understand. That's fine." Consequently, even though he was a defense witness, Hillberg was the first person to testify at trial. Appellant did not object to any portion of his testimony.

**Issues and Analysis**

Appellant's opening brief sets forth a litany of grievances regarding Hillberg's involvement in the trial. Her main complaint is that he testified out of order, which allegedly tainted the trial judge's view of the case. Appellant also contends that Hillberg should have been precluded from testifying due to a "conflict of interest" arising from his prior representation of respondents and because he "wasn't an impartial expert." In addition, respondents are accused of failing to timely designate Hillberg as an expert witness.

A trial court "exercises discretion in ruling on a request to call a witness out of order, and its ruling will not be disturbed absent a clear showing of abuse of discretion." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1413.) However, "a reviewing court

Hillberg shall have counsel to represent him by the next hearing." The minute order pertained to the ex parte application, there is no corresponding transcript of the proceeding, and we cannot ascertain what this admittedly puzzling statement means. However, it should be noted that there are absolutely no findings in the record of any impropriety by attorney Hillberg. Furthermore, the reasons for his substitution out of the case are irrelevant to our analysis of the claims on appeal.

ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Appellant not only failed to object to Hillberg testifying out of order, she agreed to it. Therefore, all claims based on the timing of Hillberg's testimony are forfeited and will not be considered.

Appellate courts often have discretion to review forfeited claims, but such discretion "should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.) We have no discretion to consider forfeited issues regarding the admission or exclusion of evidence. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) Evidence Code section 353 precludes reversal of a judgment based on the erroneous admission of evidence unless the record shows there was "an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (*Id.*, subd. (a); accord, *People v. Ramos* (1997) 15 Cal.4th 1133, 1171.)

All of appellant's claims regarding Hillberg ultimately concern the admission of his testimony at trial. Appellant made no objections to preserve those issues for appellate review. For that reason, her claims fail. (Evid. Code, § 353, subd. (a); see *In re Seaton* (2004) 34 Cal.4th 193, 198 [forfeiture doctrine "applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights"]; *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 346 [failure to timely object to expert testimony results in forfeiture].)

**Alleged Judicial Bias**

Appellant contends the probate court "erred by prejudicing the evidence presented in Mr. Hillberg's testimony demonstrating prejudice and an unwillingness to scrutinize all evidence prior to [her] even presenting [her] case[,] thereby denying [her] the right to a full and fair trial guaranteed by the 5th and 14th amendments of the Constitution."

9.

(Bold and some capitalization omitted.)  To the best of our understanding, appellant is alleging judicial bias and/or misconduct.  Her arguments focus on statements by the trial judge immediately following the testimony of attorney Hillberg:

"All right.  So, Ms. Stone, you may call witnesses.  [¶]  However, I have to tell you, just based on what has been testified to and the provisions of [the 48-page trust document] and Exhibit C, it's difficult for me to see how you can possibly prevail in this action since you're not a named beneficiary.  You're just a contingent beneficiary in the event of your father's death.  Your father hasn't died, and he and his sister, I guess it is, are the two main beneficiaries of this trust.  [¶]  So can you explain to me how you're going to overcome that?"[4]

Claims of judicial bias are forfeited if not asserted during the trial court proceedings.  (*People v. Farley* (2009) 46 Cal.4th 1053, 1110; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218.)  Likewise, " '[a]s a general rule, judicial misconduct claims are not preserved for appellate review if no objections were made on those ground[s] at trial.' " (*People v. Geier* (2007) 41 Cal.4th 555, 613.)  Forfeiture aside, "[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are not evidence of bias or prejudice.  [Citation.] '[When] the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him

---

[4]   Exhibit C was a document pertaining to the annuity purchased by Kay Byers with the life insurance proceeds from Jon Byers's death.  The remarks about appellant being a contingent beneficiary were in reference to a provision on page 31 of the 48-page trust document, which states, "In the event Douglas B. Byers dies before receiving Douglas B. Byers' entire share, … the undistributed balance of Douglas B. Byers' share shall be allocated to create one share for each living child and one share for each group composed of the living issue of a deceased child of the deceased Primary Beneficiary who are all contingent beneficiaries of Douglas B. Byers .…"

in the trial of the action.' " (*Jack Farenbaugh & Son v. Belmont Construction, Inc*. (1987) 194 Cal.App.3d 1023, 1031-1032.)  Also, a judge sitting as the trier of fact has leeway to apprise a self-represented litigant of what the judge perceives to be the dispositive issues in the case.  (See *People v. Redmond* (1969) 71 Cal.2d 745, 758, ["it is a common practice in both civil and criminal cases for trial judges, by advice and suggestion, to assist persons who represent themselves"]; see generally, *Rutherford v. Owens-Illinois, Inc*. (1997) 16 Cal.4th 953, 967 [trial court has inherent power to "exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice"].)  Pursuant to these authorities, we reject appellant's claims.

### Dismissal of Other Named Parties

As discussed, appellant's petition named her minor children as parties to the case. She alleges that her husband was "appointed" as the children's guardian ad litem, but the record citation she provides is not corroborative.  Regardless, a guardian ad litem "is not a party to the action, but merely a party's representative." (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453.)  " ' "He is like an agent with limited powers." ' [Citations.] 'The duties of a guardian ad litem are essentially ministerial.' " (*Ibid.*)

Long before trial, an issue arose regarding the ability of appellant and/or her husband to represent the children's interests without retaining legal counsel.  A minute order from August 2015 states, "The children must have an attorney represent them, if not this case will not go to trial."  A minute order dated October 29, 2015 reads: "[Appellant's husband] has no standing.  Minor children need to obtain counsel." Another minute order issued one year later says, "Children need an attorney before this matter will be set for trial."

In June 2017, on the probate court's own motion, appellant's children were ordered dismissed from the case for not having legal representation.  Appellant claims

this ruling violated her own constitutional rights, as well as those of her children.  She relies on Code of Civil Procedure section 376 (section 376), but her arguments are confusing.  In one instance, she contends the statute entitles a parent "to represent their chil[d]ren's interests."  Elsewhere she complains of not being able to amend her petition to add her husband as a party, but we find nothing in the record to suggest that permission for such an amendment was ever requested.  Appellant's argument to the probate court was that section 376 allowed her and/or her husband "to represent the interests of the children in this action."  (Bold omitted.)

Section 376 allows the parents of a minor child to "maintain an action for injury to the child caused by the wrongful act or neglect of another."  (Code Civ. Proc., § 376, subd. (a).)  It does not authorize a nonattorney to provide legal representation for the child.  "[N]o person who is not an attorney may represent another in a legal proceeding." (*Torres v. Friedman* (1985) 169 Cal.App.3d 880, 887; accord, Bus. & Prof. Code, § 6125 ["No person shall practice law in California unless the person is an active licensee of the State Bar."].)

Even if appellant could show error, the claim would fail for lack of prejudice. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107 [explaining that the California Constitution "expressly preclude[s] reversal absent prejudice"].)  To establish prejudice, appellant must show "that a different result would have been probable if [the] error … had not occurred."  (Code Civ. Proc., § 475.) Put differently, an error is harmless if it is "not reasonably probable [the appellant] would have obtained a more favorable result in its absence."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570.)

The claims of appellant's children were indistinguishable from her own insofar as they hinged on the validity and effect of Schedule C.  There is simply no basis upon which to conclude the probate court would have interpreted the trust instrument

differently but for the children's dismissal from the case. The crux of appellant's argument is that her husband knew the case better than she did and could have more persuasively argued her position to the judge. Appellant seems to believe her husband would have had an advocacy role at trial as the guardian ad litem, but she is mistaken. He would not have been a party to the action, and "a nonattorney guardian ad litem cannot appear in propria persona in a representative capacity." (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 967; see *id.* at pp. 964-968 [discussing relevant authority and rejecting the argument "that once a guardian ad litem is appointed there is no need to hire legal counsel even if the guardian ad litem is not an attorney."].) In summary, appellant fails to demonstrate error or prejudice.

### *Rulings on Objections*

Appellant argues that her constitutional rights were violated when the trial judge allegedly prohibited her from "talk[ing] about the wording of the trust." According to her, this was the practical effect of the judge "rul[ing] that 'the trust speaks for itself.' " She is referring to four instances of the judge sustaining objections based in whole or in part on the assertion that a document "speaks for itself." We address the objections in chronological order.

### Objection No. 1

1. Background

The following exchange occurred during appellant's direct examination of witness Susan Byers:

> "[Q.] Okay. Were you present at a meeting with Jon [Byers] and the Byers family members regarding the trust early on?
>
> "[A.] There was a family meeting in the fall of 2002, in November.
>
> "[Q.] And who was present at that meeting?
>
> "[A.] His children, Douglas and Kristen, and [various relatives of respondents].

13.

"[Q.]  Did Jon—

"[A.]  And myself.

"[Q.]  And yourself.  Okay.  Did Jon pass out any documents regarding the trust on that day?

"[A.]  He passed out a couple of pages regarding the trust.  And I don't have a copy.  But he -- he in broad terms addressed his intention and wishes.

"[Defense counsel:]  I would have the same objection, Your Honor.  Previously the document was going to speak for itself.

"[Trial Judge:]  Well—

"[Defense counsel:]  There isn't any allegation of fraud or undue influence or anything.   Quite the contrary.

"[Trial Judge:]  All right.  Yeah, sustained."

2.  Analysis

The attachments to appellant's original and amended petitions include a sworn declaration by the same witness, Susan Byers.  In pertinent part, the declaration references the meeting she was asked about at trial.  It states, "Jon passed out a document on that day detailing some of the information contained in the trust and outlining his wishes."  At trial, as quoted above, appellant asked if Jon Byers had passed out any documents "regarding the trust."  The witness used the same phrase in her response.  Therefore, the subject matter of the question and answer was not the trust instrument, but some other document containing statements about the trust.

An objection that a document " 'speaks for itself' " alludes to the secondary evidence rule, formerly known as the " 'best evidence' " rule.  (*Meadows v. Lee* (1985) 175 Cal.App.3d 475, 490; see *Hart v. Keenan Properties, Inc.* (2020) 9 Cal.5th 442, 450.)  The principle is codified in Evidence Code section 1523:  "Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing."  (*Id.*, subd.

14.

(a).)  The proponent of such oral testimony, i.e., secondary evidence, has the burden of showing the testimony is admissible.  (See Evid. Code, §§ 400, 403, 1523, subds. (b)-(d).)  Secondary evidence "must comply with the rules governing the admissibility of evidence generally, including relevance (Evid. Code, § 351) and the hearsay rule (*id*., § 1200 et seq.)." (*Dart Industries, Inc. v. Commercial Union Ins. Co*. (2002) 28 Cal.4th 1059, 1070, fn. 2.)

In light of appellant's attempt to elicit testimony regarding the content of a writing, a secondary evidence objection was warranted and appropriately sustained. Appellant made no effort to refute the objection with an offer of proof concerning the requirements for admissibility or the witness's anticipated testimony on the subject.  (See Evid. Code, § 354; *People v. Schmies* (1996) 44 Cal.App.4th 38, 53 ["An offer of proof should give the trial court an opportunity to change or clarify its ruling and in the event of appeal would provide the reviewing court with the means of determining error and assessing prejudice."].)  Therefore, neither error nor prejudice have been shown.

**Objection No. 2**

1. Background

Appellant's second witness, Sudhir Sahni, testified that he is a "chartered life underwriter," and certified financial planner.  He had both a professional and personal relationship with settlor Jon Byers.  Sahni hired Byers to work for him at a life insurance company in the 1970s, and they became friends over time.  Prior to his death, Byers discussed his testamentary intentions with Sahni.  The relevant portion of Sahni's testimony is as follows:

"[A.]  So later on then he established a trust, and then he read me the language and he asked me, he said, 'What do you think?'

I said, 'Sounds fine to me.'

15.

And I emphasized -- what I really emphasized with him was that most living trusts are irrevocable trusts. They -- there has to be - - the key thing that you need to emphasize with your children is there has to be an accounting every 120 days, six months, or whatever, but on a regular basis so all the beneficiaries know as to where the moneys are.

"[Q.] Okay. In your professional experience, do you believe that I was entitled to distributions as a beneficiary?

"[Defense counsel:] Objection, Your Honor. Calls for speculation.

"[A.] I didn't get that.

"[Trial Judge:] Excuse me, sir. There's been an objection.

"[Defense counsel:] He's not an expert. He has not reviewed the trust. He's being called upon to give an expert opinion. And further --

"[Trial Judge:] Sustained.

"[Defense counsel:] -- the document speaks for itself.

"[Trial Judge:] Sustained."

2. Analysis

Appellant argues that Sahni should have been allowed to answer the question given his "relationship with Jon Byers in creating the trust." However, Sahni was asked to provide an opinion based on his "professional experience," i.e., to testify in an expert capacity. Because the trial court sustained an objection based on the witness's lack of expert qualifications, the subsequent "document speaks for itself" objection was superfluous. If the earlier objection had merit, any error in sustaining the latter objection was harmless. Rulings on evidentiary objections, including those concerning the admission of proposed expert testimony, are reviewed for abuse of discretion. (*People v. Chavez* (1985) 39 Cal.3d 823, 828; *People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639.)

To testify as an expert, a witness must have special knowledge, skill, experience, training, or education in the subject area of his or her proposed testimony. (Evid. Code, § 720, subd. (a).) "Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." (*Ibid.*) "[A]n expert's qualifications 'must be related to the particular subject upon which he is giving expert testimony. Qualifications on related subject matter are insufficient.' " (*People v. Chavez*, *supra*, 39 Cal.3d at p. 828.)

"Whether a particular subject is a proper one for expert opinion and whether a particular expert is qualified to give an opinion on that subject are closely related issues. An expert is permitted to offer an opinion on 'a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 766, quoting Evid. Code, § 801, subd. (a).) Appellant's witness was asked to provide his own interpretation of the trust based on his "professional experience" in the life insurance industry and as a financial planner. It was clearly within the probate court's discretion, sitting as the trier of fact, to conclude the witness was not qualified to render an expert opinion and/or that such testimony would not be of material assistance. Therefore, the objection was properly sustained.

**Objection No. 3**

1. Background

Appellant's case-in-chief concluded with the examination of respondent Kristen Geller as an adverse witness (see Evid. Code, § 776). Appellant contends the objection in this quoted exchange was erroneously sustained:

> "[Q.] In the trust, use of IRS user tax identification, page two, paragraph one,
> does the trust state that as long as both trustors are living, the trust is
> revocable?
>
> "[Defense counsel:] Your Honor --

17.

"[A.]   I don't think I can answer that.

"[Defense counsel:]   I would object as the document speaks for itself.

"[Trial Judge:]   Sustained.  The trust speaks for itself."

2.  Analysis

Appellant's question called for testimony about the content of a writing and thus implicated the secondary evidence rule.  (Evid. Code, § 1523, subd. (a).)  As the proponent of the evidence, it was appellant's burden to show the testimony would be admissible under an exception to the rule.  (See *id.*, §§ 400, 403, 1523, subds. (b)-(d).)  She failed to do so.

Even if error could be shown, there is no indication of prejudice.  The question called for a yes or no response.  The witness answered before the objection was made, and appellant does not explain how the response might have altered the outcome of the case had the objection been overruled.

Appellant believes the irrevocability of the trust during the period between Jon Byers's death and Kay Byers's death is important because it allegedly contradicts certain testimony by attorney Hillberg.  However, the issue here is the testimony of respondent Geller.  Shortly before the objection and ruling in question, Geller answered "No" when she was asked if Kay Byers had ever revoked or modified the trust during her lifetime.

Appellant was not deprived of the opportunity to present her theory of the case.  She could have articulated her position and reasoning during closing argument, but for whatever reason her remarks were brief and generalized.  Again, neither error nor prejudice have been shown.

**Objection No. 4**

Appellant asked respondent Geller, "Did Kay [Byers] intend for the trust to be the recipient of all of their assets?"  Defense counsel objected:  "The document speaks for itself."  The objection was sustained.

18.

In this instance, the objection should have been overruled.  Appellant was not seeking to prove the content of a writing through oral testimony.  She was inquiring of the witness's knowledge about Kay Byers's testamentary intent.  However, it is not reasonably probable that the case would have been decided differently but for the error.

Appellant's question called for a yes or no answer, but it was ambiguous and misguided.  The outcome of the trial did not depend on whether the settlors had intended, at some unspecified point in time, to leave their assets to "the trust."  The dispositive issues were whether the settlors intended to create and fund Schedule C, and whether Schedule C was ever actually funded.  Because the excluded testimony would not have addressed those issues, the error was harmless.

### *Allegations of Unfair Surprise*

Appellant assumes the probate court's conclusion that Schedule C lacked sufficient foundation was directly connected to attorney Hillberg's testimony that it was not physically attached to "the actual signed trust."  In her final claim on appeal, she alleges "[t]he assertion that schedule C was not a part of the trust was never presented prior to the trial or in discovery or in [respondents'] trial brief that was filed."  Respondents' reliance on an a previously undisclosed theory is said to have violated appellant's constitutional rights.

If appellant is challenging the admission of Hillberg's testimony, the claim is forfeited and cannot be considered.  (See Evid. Code, § 353.)  She did raise the issue of surprise in her motion for new trial, but none of the claims on appeal are based on the denial of that motion.  In any event, "the 'right to a new trial on the ground of surprise is waived if, when the surprise is discovered, it is not made known to the court, and no motion is made for a mistrial or continuance of the cause.' " (*Kauffman v. De Mutiis* (1948) 31 Cal.2d 429, 432.)

If appellant could somehow overcome the forfeiture problem, she would not be able to establish prejudice.  The judgment states that "even if" a contrary finding had been made regarding the foundational issue, respondents would have prevailed on other grounds.  In other words, appellant would not have obtained a more favorable result in the absence of the alleged error.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                                   SMITH, J.

WE CONCUR:


HILL, P.J.


SNAUFFER, J.